Good morning, Your Honors. If it may please the Court, I'm Jim Kemp. I'm representing Knuth Hinge Company from Montague, California. The issue in the case is whether the business owner's business property standard form policy issued by Travelers Indemnity to Knuth covers the theft of trade secrets. I finally come to the belief and understanding that Travelers' essential argument in denying the claim is that the policy is limited to tangible property, and that they tender that argument for two reasons. Number one, because in one instance, there's a limitation to direct physical loss or damage, and only intangible property can sustain direct physical loss or damage. And in the second instance, there's a limitation to property, quote, quote, located at the premises or near it or in an automobile, and only tangible property property can have a location. That is to say, intangible property may not have a location. And with that in mind, I — my prepared argument is addressed to whether or not the — those two limitations limit coverage to tangible property and does not include intangible property. But, I mean, doesn't the — under the additional coverage section of the policy, doesn't it say there that coverage is limited to physical losses? Let's say that. In the additional coverage? Yeah. For employee dishonesty? The — Physical losses. Yeah. Coverage A — But there's no limitation in employee dishonesty. No, there is no — Is that what you're talking about now? Lord. Employee dishonesty. No, I'm talking about the general grant of coverage in the coverage A. It says that we will — we will pay for direct physical loss or damage to covered property, okay? And the point I was trying to make is that it's my understanding that Travers is saying because intangible property cannot suffer or sustain direct physical loss or damage, the policy is limited to tangible property, intangible property. The district court didn't buy that argument. The — yes, it did, Your Honor. No, no. The district court said that trade secrets — Oh, excuse me. No, the district court did not. No. No. The district court said the policy covers intangible property. Correct. For sure. And the trade secret — so therefore, trade secrets which are intangible are — could be covered. As a matter of fact, I think Judge Dameron expressly said it would be covered. Yes. Yes. So, yes, indeed. Indeed. And then the district — He went off on the physical loss. Yes. Then he said nonetheless the property in question did not sustain a direct physical loss or damage. Right, a direct physical loss. Yes. And then he carries that same point over into the additional coverage, employee dishonesty.  He says we have to read this document internally so it's consistent. In total, yes. So he brings over the direct physical loss and he basically adds it to employee dishonesty. That's correct, yes. It was — Now, that seems to be contrary to California insurance law. Oh, it is in contrary to insurance law. And he was looking to the — to the — to the certain underwriters and lawyers, the Powerline case. Right. Powerline case, which was confronted with the issue as to whether the liability insurer, CGL liability insurer, had the duty to — to indemnify for administrative order clean-up costs, okay, whereas earlier in Foster Garner, the California Supreme Court had said that there's no duty to defend against administrative actions pursuing clean-up costs. And so they did what they called the Foster Garner syllogism and said — and said there is no coverage. And linked the two cases together and linked the duty to defend and the duty to — to indemnify together, okay. And there's no such correlation between the employee dishonesty coverage and the general grant of coverage in this case. Okay. So — Did he ever prove — I beg your pardon, Your Honor. How do you prove loss here? I know that's — the district court never got to that issue, but how do you prove loss? Oh, we didn't. But, you know, because of the Federal rules, we've — I'm just curious. We've had to engage experts, and — and that's been done. That's been done. And it's — it's mystified. It's a valuation question? It's a valuation question, and it requires, indeed — well, it requires. It's a valuation question that looks at — at what the business was doing at one time, what it was doing during this time, and what it was doing at the next time and what projections are and things of that nature. Ultimately, is there a problem with — with profits and, you know, lost profits and all of that? If the court is — is — I'm — that's just — I'm just curious. That's not — the issue was not addressed here, and I realize there are other — It — it does not require the use of profit and loss statements any more than the covered loss of business income requires reference to profit and loss statements. That's another question for another day. But it is a profit-loss argument that you make by way of damages, not to maintain possession of this intangible property. It was just a loss of confidentiality in it for some period of time. So you can't really diminish the value of a trade secret, so then you have to project that on into loss of sales. If we see that that can't be done, doesn't that end the case for you? Oh, but it can be done. Yeah. In a profit and loss situation, is that where you're going? The — In other words, because these people had your confidential information, were selling in unless your profit dropped, so that's the measure of your damages? If the cases say that that's not a proper measure of damages, then where do you go here? And if you can't go anywhere, why do we spend our time with it? Well, all I know is that my client, Newthinge Company, hired experts to calculate their damages under two different scenarios. Number one, when the loss of business income was included, and under another one, when it was not. And that those experts came up with computations that showed a substantial diminution in value so far as the trade secrets were concerned during the time that they were shared, so to speak, with the competitors, that Newth no longer had the exclusive — I'm sure these business economists, I mean, you know, I've seen them testify to — Yeah. — kinds of valuation of business — You can come up with anything. Right. And, you know, whether it ultimately is sustainable or that is — whether it's persuasive enough is a whole other question, or whether they can do it without dealing directly with profit loss is a whole other question. But I realize that Justice Breyer didn't get to that issue, but I just found it interesting because — Yeah. Ultimately, if you do prevail, you still have to go back and address the question of loss. Yes, we do. Yes, we do. Yeah. Right. And that's going to be a problem. But we've got experts there. And the report wasn't even included in the summary judgment record. And the experts now have dollars, right? Yeah. Okay. Well, the point I'd like to make, and I see I'm using up my time, is that the — as I see it, travelers' argument is that this policy is limited to tangible property for the two reasons I gave, okay? Location, direct physical. All right? Yeah. Therefore, it is a limitation of coverage they're arguing for. Therefore, all four rules of construction would apply, okay? First, second, third. And the fourth one, the conspicuous, plain, and clear rule of construction, okay? And I would just like to point out and emphasize, okay, that when it comes to limiting coverage to tangible property, in this very policy, in the CGL standard form that's a part of this policy, travelers expressly limit damages to physical damage to tangible property, okay? And in 2001, according to the Rutter Group's work on insurance litigation, in 2001, the industry amended that CGL standard form to expressly exclude trade secrets, to exclude liability for misappropriation of trade secrets. And it's my position that what I — that's what travelers has to do. It has to amend this policy rather than coming in, taking existing language, forcing it out of context, using it for limitations it wasn't intended to accomplish and come up with coverage. But my time is up. Okay. Thank you very much. Thank you. Good afternoon, Your Honors. There is nothing in this policy to indicate that it's intended to cover intangible property rights. In fact, everything in the policy strongly suggests that it's intended to apply to tangible property. First of all, in fact, I'll turn right to the additional coverage for employee dishonesty, which refers to business personal property is what has to be — what has to be damaged. What page are you looking at? It's page 133 of the excerpts of record, which is page 4 of the policy. On the left-hand column, under number 6, additional coverage is number A, employee dishonesty. It says, we will pay for loss of or damage to business personal property resulting directly from employee dishonesty. Business personal property is defined on the first page of the policy, which is page 130 in the excerpts of record. To be property located in or on the buildings described in the declarations — Right-hand column. Yeah. Paragraph B. B. Business personal property. Wait. B. Oh, business personal property. Okay. Yes. Located in or on the buildings described in the declarations or in the open or in a vehicle within 100 feet of the described premises. So it has to have a physical location on the premises or within 100 feet of the premises. Does that include a compact disk with the proprietary information on your manufacturing process? Yes, it would. If a compact disk with proprietary information were stolen, the policy specifically provides what — how that will respond. It would be covered what would be paid. The value of that is the cost of replacing the material, the disk itself, which is de minimis, and the labor required to duplicate the information on the disk. And it specifically provides that on page 137 of the excerpts. And down at the bottom right-hand corner it says, your business personal property insurance is extended to apply to your costs to research, replace, or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. In this case — so what they're saying is we'll replace the disk and we'll duplicate the information for you. We'll pay for the labor required to duplicate the information. In this case, they didn't lose the actual information. The actual information, as they have agreed and stipulated, was always on their premises. All they lost was the confidentiality, the exclusivity of it. And the policy specifically addresses what happens when valuable information is lost, and all that is covered for that is the cost of replacing the information. It also has an exclusion for any consequential loss, which in this circumstance read together with the requirement or the provision that it will pay to restore the lost information, makes it pretty clear that they're not going to pay for the consequences of losing the information. They're not going to pay for loss of market, which is another exclusion we relied on. They're not going to pay for anything that you need a profit and loss computation to evaluate. What they're going to — What language do you use to support that position? Those are the exclusions. On page 139, the exclusions — exclusion B says, we will not pay for loss or damage caused by or resulting from any of the following, and one of them is delay, loss of use, or loss of market. And then on the next page — Which section are you — That's page 139 of the excerpts. Oh. In the bottom part of the right-hand column, paragraph 2, 2B, we will not pay for loss or damage caused by or resulting from loss of market. And then there's a similar exclusion for — which begins at the bottom of 140 and goes on to 141, for loss of property or that part of any loss, the proof of which, as to its existence or amount, is dependent upon — and then on 141, a profit and loss computation. So what we're talking about here is, if the papers that had customer lists and so on on them were stolen, then the cost of the paper would be covered, the cost of recreating the customer list would be covered, the confidentiality of that paper is not covered. Newth argued in its — But why not? Why not? Well, because it doesn't have a physical location. Even if you accept — which I'll get to in a minute — even if you accept that under the employee dishonesty coverage it doesn't have to be tangible property, it still has to be business personal property, which requires a physical location by definition. The definition of it is it has to be located on the premises or within 100 feet of the premises. So it has to have a physical location. But where were these trade secrets kept? In a computer. Well, the exclusivity of the trade secrets wasn't kept anywhere. That's what they lost. We know that from the Avery-Denison case this Court decided last year, that the — what is lost in this kind of situation is not the paper that has the trade secrets, and certainly in this case they've admitted it wasn't the paper. It's not any physical embodiment of the trade secrets. It's the exclusivity of the information. And that's what was lost, and that's what they're making the claim for. And that doesn't have any physical location. So if someone steals the secret formula of Coca-Cola and they have a policy like this, then the only coverage is writing down a formula on a piece of paper? I don't know, but I would imagine that Coca-Cola has a policy that covers theft of trade secrets, which this does not. That's obviously a very important thing for Coca-Cola. I would assume that they have made the effort to get coverage for that specific thing. This policy is designed to cover the actual property that is located on the premises. It's a standard business property policy. Well, the exclusivity of trade secrets, though, is property. Yes, but it doesn't have a physical location. For tax purposes, it has a location. Well, for tax purposes where you have to insist on a location, and I would like to address this because it's an argument that was raised for the first time in their reply brief. They didn't raise it in the district court. They didn't raise it in their opening brief on appeal. In their reply brief, they started citing cases saying, well, for tax purposes, intangibles have to be assigned a location. And that's true. They have to be assigned a location for tax purposes. What we're doing here is not a situation where we have to assign a location to these things. We're looking at whether this policy was intended to cover it, whether it would be reasonably understood to cover it. And when you're talking about a policy that requires a physical location for the property for it to be covered and that it has to be physically located on the premises. Or in the premises. In the premises or on the premises or within 100 feet of the premises. You're talking about something that has to have some physical being. That's the obvious intent of that. The only reason that it's done in the tax cases is because somebody has to pay tax on it. And so there's a requirement that it be taxed. And, in fact, a couple of the cases they've cited say things like the Oakland Raiders case says an intangible has no physical characteristics that would serve as a basis for assigning it to a particular locality. And that's the case here. The mercantile guarantee case says intangible property or property rights in the strict sense of physical location can have no real domicile or situs. So in the tax cases where it is legally required that there be a legal location, the courts will impute and assign a legal location. There's no need to do that here. What we're doing here is not finding something that has to have some kind of legal location. We're trying to decide whether this is something that would be intended to be covered under this policy. And, in fact, because the business personal property definition requires that it be located on the premises, the exclusivity of knowledge is not something that can be physically located on the premises. Again, I'd like to get to the issue of direct physical loss. The way the policy is set up is if you turn to page 130 of the excerpts, there's coverage A. A sets forth what is covered. And then underneath that there's number 1, which has more detail about certain things. Number 2 has more detail about what's not covered. Number 3 has detail about business income. 4, 5, 6, and 7 all have additional detail underneath that initial definition of what is covered. And what is covered, if you turn back to page 130, says, we will pay for direct physical loss of or damage to covered property at the premises caused by or resulting from a covered cause of loss. And so the rest of these sections are simply explaining or adding detail to how that works. In 6, the employee dishonesty provision that we've been talking about explains under what circumstances thefts that are employee dishonesty will be covered, because there's exclusion for theft, and then there's an exception to that for things that are within the scope of this employee dishonesty provision. And so that's what the purpose of that is. It's not to expand the scope of coverage when you have employee dishonesty. It's to define the exception to the exclusion for theft. And it deals with things like whether there's still an employee or not, whether coverage for that employee was canceled, whether it was discovered within one year from the end of the policy period, what the limit of coverage might be if there's employee dishonesty claim. So it treats employee dishonesty claims with certain different things as set forth there. It doesn't say there that the requirement of a direct physical loss does not apply. It just doesn't address that one way or the other. It just says we'll pay for loss or damage to business personal property resulting from employee dishonesty. So either way you look at it, that this is a subset of the main coverage grant, which requires a direct physical loss, or the definition of business personal property, which requires a physical location, the policy is obviously intended to apply only to property that has physical characteristics and not to intangibles. There's absolutely nothing in it that suggests intangibles. In fact, there's one other provision I'd like to point to. If there's anything that ever could be considered an intangible that you would think might be covered, it's money. You would think if somebody is somehow embezzling money and intangibles were going to be covered, then that would be defined here. But if you turn to page 149 of the excerpts, it defines money as currency and coins in current use. And it goes on bank notes, traveler's checks, register checks, and money orders. It does not include just the value of money apart from its physical embodiment. So there's absolutely nothing in the policy to suggest that any kind of intangible is covered. In fact, everything else points to it applying only to tangible property. The plaintiff is making this argument because it does not have the word tangible in the policy, but there's a long line of cases that just because a provision could have been written more specifically to the case at hand doesn't mean that you then can drive a truck through that hole and say, well, it's ambiguous, and we'll interpret it to find coverage. If the policy read as a whole does not indicate coverage, it's not covered. Thank you. And the matter will stand submitted. Thank you, Your Honor. And we call the last case Turner v. May Lee.
judges: Pregerson, Beam, Paez